**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| WENDY SMOTHERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SWERVE, L.L.C. and TC HEARTLAND LLC d/b/a Heartland Food Products Group<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Wendy Smothers ("Plaintiff"), individually and on behalf of all others similarly situated, based on personal knowledge as to Plaintiff's own experiences and on the investigation of counsel as to all other matters, alleges the following against Defendants Swerve, L.L.C. and TC Heartland LLC d/b/a Heartland Food Products Group (collectively, "Defendants"):

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of herself and all other similarly situated consumers who purchased Swerve, Splenda, and Whole Earth zero calorie sweeteners that contain allulose (the "Products").[1] Defendants market the Products as sugar replacements and represent on the front of every package that the Products contain "ZERO SUGAR & CALORIES," "zero

[1] The Products comprise (i) Swerve Granular Zero Calorie Sweetener ("Swerve Granular"); (ii) Swerve Brown Zero Calorie Sweetener ("Swerve Brown"); (iii) Swerve Allulose Blend Zero Calorie Sweetener ("Swerve Allulose Blend"); (iv) Splenda Magic Baker Zero Calorie Sweetener ("Splenda Magic Baker"); (v) Splenda Magic Baker Brown Zero Calorie Sweetener ("Splenda Magic Baker Brown"); (vi) Splenda Multi-Use Syrup Zero Calorie Sweetener ("Splenda Multi-Use Syrup"); (vii) Whole Earth Allulose & Monk Fruit Blend Zero Calorie Sweetener; (viii) Whole Earth Stevia Leaf, Monk Fruit & Allulose Blend Zero Calorie Sweetener; (ix) Whole Earth Stevia Leaf, Monk Fruit & Allulose Brown Zero Calorie Sweetener; (x) Whole Earth Allulose Zero Calorie Sweetener; and (xi) Whole Earth Liquid Allulose Zero Calorie Sweetener in all size and package configurations.

sugar," "0g sugar," "0 Calories Sugar per serving," or are "sugar free" (the "Zero Sugar Representation(s)"). Defendants repeat these representations throughout the Products' packaging and marketing.

2. The Products, however, do not have zero sugar. Every serving of the Products contains allulose. Allulose is a monosaccharide, qualifying it as a sugar under the applicable federal and Illinois labeling standards.

3. Defendants' own labeling admits that the Products contain allulose. For example, the ingredients list on the Products identifies "allulose" as the first or second ingredient by weight. Yet, the Products' labels repeatedly represent that the Products contain "ZERO SUGAR & CALORIES", "zero sugar", "0g sugar", "0 Calories Sugar per serving", or are "sugar free." These Zero Sugar Representations are nutrient-content claims under 21 C.F.R. § 101.13(b). Because "zero sugar" and "sugar free" are terms governed by 21 C.F.R. § 101.60(c)(1), they may be used only if the Products satisfy every condition of that regulation, and the "0g sugar" and "0 Calories Sugar per serving" statements are permitted only if they are not "false or misleading in any respect." 21 C.F.R. § 101.13(i)(3). The Products fail those conditions. Each Product contains more than 0.5 grams of sugars per reference amount customarily consumed and per labeled serving that § 101.60(c)(1)(i) permits. The labels also lack the disclosure § 101.60(c)(1)(ii) requires for an ingredient that is a sugar, though no disclosure could cure the Products' failure to meet § 101.60(c)(1)(i). Defendants' Zero Sugar Representations are both false and misleading in every respect.

4. Plaintiff therefore brings claims, on behalf of Plaintiff and the classes defined below, for violations of: (1) the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*; (2) the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1

*et seq.*; (3) breach of express warranty; and (4) unjust enrichment.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the proposed Classes include more than 100 members, the aggregate claims of the proposed Classes exceed $5,000,000, exclusive of interest and costs, and at least one member of the proposed Classes is a citizen of a State different from at least one Defendant. Plaintiff is a citizen of Illinois. Each Defendant is an unincorporated association and, under 28 U.S.C. § 1332(d)(10), is a citizen of the State under whose laws it is organized and the State where it has its principal place of business. Defendants are therefore citizens of Louisiana and Indiana. This Court has supplemental jurisdiction over any state-law claims not within its original jurisdiction pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

6. This Court has personal jurisdiction over Defendants because Defendants market, sell, and distribute the Products throughout Illinois, including in this District, and have sufficient minimum contacts with Illinois. Defendants' contacts include, without limitation, sales of the Products directly to consumers located in this District; advertising and marketing directed into this District; and operation of an e-commerce website and third-party retail listings through which consumers in this District have purchased the Products.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District: Plaintiff resides in this District, purchased the Products in this District, and was injured in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendants conduct substantial business in this District, have sufficient minimum contacts with this District, and otherwise

purposely avail themselves of the markets in this District through the promotion, sale, and marketing of the Products in this District.

## PARTIES

8. Plaintiff Wendy Smothers is a citizen of Illinois residing in Round Lake Beach, Illinois. In July 2026, Plaintiff purchased Swerve Brown Zero Calorie Sweetener and Swerve Granular Zero Calorie Sweetener for personal, family, or household use from Walmart in Round Lake Beach, Illinois, for approximately $6.98 per unit. Before purchasing, Plaintiff saw and relied on Defendants' prominent Zero Sugar Representation that the Products contained "ZERO SUGAR & CALORIES." Based on that Representation, Plaintiff reasonably believed that the Products contained no sugar. The Representation was a material part of Plaintiff's decision to purchase, and Plaintiff would not have purchased the Products, or would have paid less for them, had Plaintiff known that they contained allulose, a sugar. Plaintiff paid a price premium attributable to the Zero Sugar Representation and did not receive the benefit of the bargain because the Products contain allulose.

9. Plaintiff would purchase the Products again if they truly contained no sugar but cannot know whether Defendants' labeling and marketing have been or will be corrected, and the Products' composition may change over time. If Defendants continue to make the challenged Representations, Plaintiff will be unable to make informed purchasing decisions and is likely to be misled again absent injunctive relief. Plaintiff is an average consumer without specialized knowledge of food chemistry, and neither Plaintiff nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

10. Defendant Swerve, L.L.C. is a limited liability company organized under the laws of Louisiana, and it maintains its principal place of business at 1 Sugar Creek Center Blvd., Suite

500, Sugar Land, TX 77478. Swerve, L.L.C. formulates, labels, markets, distributes, and/or sells the Swerve-branded Products throughout Illinois and the United States, including in this District. At all relevant times, Defendant Swerve, L.L.C. controlled the formulation, labeling, and marketing of the Swerve-branded Products, including the representations referenced herein.

11. In May 2026, Heartland Food Products Group announced an agreement to acquire the Americas business of Whole Earth Brands, Inc., including the Swerve and Whole Earth sweetener brands.[2] Defendant TC Heartland LLC d/b/a Heartland Food Products Group ("Heartland") is an Indiana limited liability company with its principal place of business in Carmel, Indiana. Upon information and belief, that acquisition has closed, and Heartland now owns and controls Defendant Swerve, L.L.C., the Swerve brand, and the Whole Earth brand. On information and belief, Heartland holds Swerve and Whole Earth out as its brands and exercises ownership and control over those brands and their commercial strategy. On information and belief, Heartland directs and participates in the manufacture, marketing, and promotion of the Products. Each Whole Earth-branded Product's label states that it is "Distributed for: Whole Earth Sweetener Co. LLC," which, on information and belief, is owned and controlled by Heartland following the acquisition.

12. Additionally, Heartland is the owner and manufacturer of the Splenda brand and manufactures, labels, markets, distributes, and/or sells the Splenda-branded Products throughout Illinois and the United States, including in this District.

## FACTUAL ALLEGATIONS

### Consumers Seek Out and Pay Premium Prices for Products That Contain No Sugar

13. Consumer demand for products without sugar is well documented. In a 2025

[2] https://www.prnewswire.com/news-releases/heartland-food-products-group-to-acquire-whole-earth-brands-americas-business-302780266.html (last accessed Nov. 3, 2026).

national survey, three out of four Americans reported that they were trying to limit or avoid sugar.[3]

14. That demand accords with public-health guidance from federal agencies (including the Dietary Guidelines for Americans), the World Health Organization, and the American Heart Association, each of which recommends limiting added-sugar intake.[4]

15. Tabletop sweeteners such as the Products exist to serve that demand. Consumers buy a sugar substitute precisely because they want to sweeten foods and beverages without sugar. Defendants know this: they market the Swerve-branded Products as "The Ultimate Sugar Replacement®," represent that the Products "measure[] like sugar" or can be used in place of sugar, and place Zero Sugar Representations prominently on the Products' packaging, including by placing "ZERO SUGAR & CALORIES" first among the claims on the front panel of the Swerve-branded Products.

16. Manufacturers reserve the principal display panel for the claims they believe will most motivate a purchase, and products bearing "zero sugar" or "sugar free" claims command higher prices than comparable products that do not bear those claims. By representing that the Products contain zero sugar when they contain allulose, Defendants obtain an unfair advantage over competitors that label comparable products accurately.

**<u>The Products and Defendants' Zero Sugar Representations</u>**

17. The Swerve-branded Products are granulated tabletop sweeteners sold in resealable

---

[3] Int'l Food Info. Council, *2025 IFIC Food & Health Survey: A Focus on Sugars & Sweeteners* 5, 9 (Dec. 2025) (reporting that 75% of surveyed Americans were trying to limit or avoid sugar in their diet), https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Sugars-Sweeteners.pdf.

[4] U.S. Dep't of Health & Hum. Servs. & U.S. Dep't of Agric., *Dietary Guidelines for Americans, 2025–2030* (Jan. 2026), https://cdn.realfood.gov/DGA.pdf; World Health Org., *Guideline: Sugars Intake for Adults and Children* (2015), https://www.who.int/publications/i/item/9789241549028; Am. Heart Ass'n, *Added Sugars*, https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars.

pouches, including a 12-ounce (340 g) size and a 48-ounce (3 lb) size. Defendants' website lists the 12-ounce Granular Product at $7.99.[5] The Splenda Magic Baker Products are granulated tabletop sweeteners sold in a 16-ounce resealable pouch, and Splenda Multi-Use Syrup is a liquid sweetener sold in an 8-ounce bottle. The Whole Earth-branded Products are tabletop sweeteners sold in granulated form in resealable pouches of various sizes (including 12-ounce and 28-ounce sizes) and in single-serve packets, and, in the case of Whole Earth Liquid Allulose Zero Calorie Sweetener, in liquid form in an 11.5-ounce bottle. Defendants represent that the granulated Products measure 1:1 like sugar and that the Products can be used to replace sugar (or, in the case of Splenda Multi-Use Syrup, sugar-based syrups and sweeteners such as maple syrup, honey, and brown sugar) in baking, beverages, and other recipes.

18. Although the wording varies by brand, each Product bears at least one Zero Sugar Representation on its front-of-package display panel: "ZERO SUGAR & CALORIES" (Swerve Granular and Swerve Brown); "SUGAR FREE" (Splenda Magic Baker and Splenda Magic Baker Brown); "0 Calories Sugar per serving" (Splenda Multi-Use Syrup, whose back label adds "ZERO SUGAR"); and "0g Sugar" (Swerve Allulose Blend and each Whole Earth Product). Each Product lists allulose as an ingredient, and none identifies allulose as a sugar or follows it with the statement 21 C.F.R. § 101.60(c)(1)(ii) requires. The Nutrition Facts panels on the Swerve and Whole Earth Products declare "0g" Total Sugars. The panel on Splenda Multi-Use Syrup omits a sugars line and states that the Product is "[n]ot a significant source of … total sugars," and Splenda Magic Baker panels have appeared in both forms. Each Zero Sugar Representation conveys the same message, that the Product contains no sugar, and the resulting economic injury is the same regardless of brand, variety, or size.

---

[5] https://swervesweet.com/products/swerve-granular (last visited Nov. 3, 2026).

19. The Zero Sugar Representations communicate to reasonable consumers that the Products contain no sugar. That is the plain and ordinary meaning of "ZERO SUGAR & CALORIES", "zero sugar", "0g sugar", "0 sugar per serving", and "sugar free." The representations are absolute and quantitative, and none is accompanied by any asterisk, qualification, or disclosure concerning allulose.

20. The front panel of the Swerve Granular and Swerve Brown Products' packaging displays the "Swerve" brand name, the word "GRANULAR" or "BROWN", the words "ZERO CALORIE SWEETENER", and a column of four badges, the first of which states "ZERO SUGAR & CALORIES". The remaining badges state "PLANT BASED", "KETO FRIENDLY", and "1:1 MEASURES LIKE SUGAR" (or "LIKE BROWN SUGAR"). The front panel of the Swerve Allulose Blend Product displays "THE ULTIMATE SUGAR REPLACEMENT®", "ZERO CALORIE SWEETENER", and a bar of claims that begins with "0g SUGAR".

21. The back panel of the Swerve-branded Products' packaging represents that they are "The Ultimate Sugar Replacement" and contain "0g sugar per serving."

//

//

//

//

//

//

//

//

//

**Swerve Granular Zero Calorie Sweetener**[6]










---

[6] *Id.*

**<u>Swerve Brown Zero Calorie Sweetener[7]</u>**










---

7 https://swervesweet.com/products/brown-swerve (last visited Nov. 3, 2026).

**Swerve Allulose Blend Zero Calorie Sweetener**[8]







**PRODUCT DESCRIPTION**

This delicious, versatile sweetener measures like sugar with zero calories and 0g sugar per serving. This allulose blend is made with no sugar alcohols or artificial flavors, colors or preservatives. Since it measures like sugar, you can simply replace sugar with this sweetener in your favorite baked good recipes, in beverages and more!

22. Defendants also disclose, in the "ZERO NET CARBS" statement on the back panel of the Swerve Granular and Swerve Brown Products, that those Products contain 2 grams of allulose per 2-teaspoon (8-gram) serving. The Swerve Allulose Blend Product lists only allulose and natural flavor as ingredients, declares 8 grams of Total Carbohydrate per 2-teaspoon (8-gram) serving, and states that "NET CARBS = TOTAL CARBS – ALLULOSE" while representing that

---

[8] https://swervesweet.com/products/allulose-blend (last visited Nov. 3, 2026).

it has zero net carbs. By Defendants' own label arithmetic, the Product contains approximately 8 grams of allulose per serving.

23. The Splenda-branded Magic Baker Zero Calorie Sweetener Products are tabletop sweeteners sold in resealable pouches, including a 16-ounce (1 lb) size. Online retailers of Defendants' Splenda-branded Products list the 16-ounce Splenda Magic Baker Zero Calorie Product at $7.12.[9] Defendants represent that the zero calorie sweetener Products measure 1:1 like sugar and that the Products can be used to replace sugar (or, in the case of Splenda Multi-Use Syrup, sugar-based syrups and sweeteners such as maple syrup, honey, and brown sugar) in baking, beverages, and other recipes. The Splenda Multi-Use Syrup Zero Calorie Sweetener is a liquid sweetener sold in an 8-ounce bottle. Online retailers of the Multi-Use Syrup list it at $12.80.[10]

24. The front panel of Splenda Magic Baker and Splenda Magic Baker Brown displays the "Splenda" brand name, the words "ZERO CALORIE SWEETENER" and "Magic Baker," the statement "THE PERFECT SUGAR FREE BAKING BLEND," and a row of four badges, the third of which states "MEASURES CUP FOR CUP LIKE SUGAR."

25. The front of the Splenda Multi-Use Syrup bottle bears a round badge stating "0

---

[9] https://www.walmart.com/ip/Splenda-Magic-Baker-Zero-Calorie-Granulated-Sugar-Substitute-16-oz-Resealable-Pouch/519209271?wmlspartner=wlpa&selectedSellerId=0&wl13=2141&adid=22222222297519209271_6717345788_23892606167&wl0=&wl1=g&wl2=c&wl3=&wl4=&wl5=9007245&wl6=&wl7=&wl8=&wl9=pla&wl10=8175035&wl11=local&wl12=519209271&veh=sem&gclsrc=aw.ds&gad_source=1&gad_campaignid=23892627254&gbraid=0AAAADmfBIoXnvR7CkSBCMlEmQuDO1VEV&gclid=CjwKCAiAhqHXBhAXEiwATbksUw-R9mDjCKpKRgT0CMs7S7FFzHW_46R2vnPCrMZ8iBU3IzGNU5jhHxoC6_UQAvD_BwE (last visited Nov. 2, 2026).

[10] https://www.walmart.com/ip/Splenda-Multi-Use-Syrup-Zero-Calorie-Sugar-Free-Substitute-for-Maple-Syrup-Honey-Agave-and-Brown-Sugar-Allulose-Liquid-Sweetener-8oz-Bottle-ES7/5945376267?classType=REGULAR&from=/search (last visited Nov. 2, 2026).

Calories Sugar per serving." The back label states: "Splenda® Multi-Use Syrup is a zero calorie, zero sugar alternative to" maple syrup, honey, and brown sugar. The label states that the Product is "Distributed by TC Heartland, LLC, Carmel, IN."

**<u>Splenda Magic Baker Zero Calorie Sweetener</u>**[11]










[11] https://www.splenda.com/product/splenda-magic-baker-16-oz-pouch/ (last visited Nov. 2, 2026).

**Splenda Magic Baker Brown Zero Calorie Sweetener**[12]













---

[12] https://www.splenda.com/product/splenda-magic-baker-brown-16-oz-pouch/ (last visited Nov. 2, 2026).

**Splenda Multi-Use Syrup Zero Calorie Sweetener**[13]







26. Splenda Magic Baker's Nutrition Facts panel declares 8 grams of Total

---

[13] https://www.splenda.com/product/splenda-multi-use-syrup/ (last visited Nov. 2, 2026).

Carbohydrate and 4 grams of erythritol per 2-teaspoon (8-gram) serving. Its only other ingredients are allulose and stevia leaf extract, which is used in milligram quantities. Based on Defendants' own label figures and FDA's rounding rules, Splenda Magic Baker therefore contains approximately 3 to 4.5 grams of allulose per serving. Splenda Magic Baker Brown declares the same 8 grams of Total Carbohydrate and 4 grams of erythritol. Its remaining carbohydrate comes from allulose, molasses, and glycerin, listed in descending order by weight, so allulose accounts for at least one-third of that remainder, or at least approximately 1 gram per serving. On information and belief, Splenda Multi-Use Syrup also contains well over 0.5 grams of allulose per serving: its 6 grams of Total Carbohydrate per serving come almost entirely from its first ingredient, allulose syrup, because its other ingredients (sucralose, natural flavors, and citric acid) are used in trace amounts.

27. The Whole Earth-branded Zero Calorie Sweetener Products are tabletop sweeteners sold in granulated form in resealable pouches of various sizes (including 12-ounce and 28-ounce sizes) and in single-serve packets, and, in the case of Whole Earth Liquid Allulose Zero Calorie Sweetener, in liquid form in an 11.5-ounce bottle.

28. The front panel of each Whole Earth-branded Product displays the "Whole Earth" brand name, the words "Zero Calorie Sweetener" (or "Brown Zero Calorie Sweetener"), the product name, and a horizontal bar of claims that begins with "0g Sugar." The remaining claims include "Keto Friendly" and "Erythritol Free" and, on the granulated blends, "Plant Based." Another badge on the front label of the granulated Products states "Sugar 1:1 Replacement," "Brown Sugar 1:1 Replacement," or "Cane Sugar Replacement."

29. The back panel of each Whole Earth Product repeats the Zero Sugar Representations. It describes the Product as sweetening "with zero calories" and "zero grams

sugar" and lists "Zero Calories & 0g Sugar" among its attributes.

**Whole Earth Allulose & Monk Fruit Blend Zero Calorie Sweetener[14]**







Sweeten your wellness journey with our Monk Fruit sweetener that can replace sugar wherever you like. A mix of monk fruit and allulose, this zero calorie sweetener can be used as a 1-to-1 swap for sugar, which means you can keep digging into foods that light you up—like baked goods, hot drinks, and even cocktails—while also ticking off wellness wins.

- Zero Sugar
- Zero Net Carbs
- Zero Calories
- 1-to-1 Sugar Substitute
- Sugar-like Texture
- Keto Friendly
- Zero Glycemic Index
- Gluten-Free
- No Artificial Colors, Flavors, or Preservatives
- Erythritol Free

[14] https://wholeearthsweetener.com/products/allulose-monk-fruit (last visited Nov. 2, 2026).

**<u>Whole Earth Stevia Leaf, Monk Fruit & Allulose Blend Zero Calorie Sweetener</u>**[15]







Dial up the yum with a sweetener that's just your type. Our Stevia Leaf, Monk Fruit and Allulose Blend is a sweet swap for sugar in any recipe. By carefully selecting our ingredients, we've crafted a simple sweetener without any calories or net carbs. Allulose creates a granulated texture, while stevia and Monk Fruit ensure our blend has 1:1 sweetness to sugar.

- 0g Sugar
- Zero Net Carbs
- Zero Calories
- Great for Baking, Cooking & More
- Keto Friendly
- Low Glycemic Index
- Gluten-Free
- No Artificial Colors, Flavors, or Preservative
- Free from Sugar Alcohols, Including Erythritol

[15] https://wholeearthsweetener.com/products/allulose-blend-bag (last visited Nov. 2, 2026).

**Whole Earth Stevia Leaf, Monk Fruit & Allulose Brown Zero Calorie Sweetener**[16]







Dial up the yum with a brown sweetener that's just your type. Our Brown Stevia Leaf, Monk Fruit and Allulose Blend is a sweet swap for brown sugar in any recipe. By carefully selecting our ingredients, we've crafted a zero calorie sweetener without net carbs. Allulose creates a granulated texture, stevia leaf and monk fruit extracts ensure our blend has 1:1 sweetness to sugar, and a touch of molasses enhances the aroma and flavor.

- 0g Sugar
- Zero Net Carbs
- Zero Calories
- Great for Baking, Cooking & More
- Keto Friendly
- Low Glycemic Index
- Gluten-Free
- No Artificial Colors, Flavors, or Preservative
- Free from Erythritol

[16] https://wholeearthsweetener.com/products/brown-stevia-leaf-monk-fruit-allulose (last visited Nov. 2, 2026).

**<u>Whole Earth Allulose Zero Calorie Sweetener[17]</u>**







Dial up the yum with a sweetener that's just your type. Our Granulated Allulose is a sweet swap for any granulated sweetener, without any net carbs. It's a versatile zero calorie sweetener that can be used in hot or cold beverages, sprinkled atop oatmeal or yogurt, in baking, and more!

- 0g Sugar
- Zero Net Carbs
- Zero Calories
- Great for Beverages, Baking & Tabletop Use
- Keto Friendly
- Low Glycemic Index
- Gluten-Free
- No Artificial Colors, Flavors, or Preservatives
- Free from Sugar Alcohols, Including Erythritol

[17] https://wholeearthsweetener.com/products/granulated-allulose (last visited Nov. 2, 2026).

**<u>Whole Earth Liquid Allulose Zero Calorie Sweetener[18]</u>**




Dial up the yum with a liquid sweetener that's just your type. Our Liquid Allulose is a sweet swap for any liquid sweetener, without any net carbs. It's a versatile zero calorie sweetener that can be used in hot or cold beverages, drizzled atop oatmeal, in smoothies, and more!

- 0g Sugar
- Zero Net Carbs
- Zero Calories
- Great for Beverages
- Keto Friendly
- Low Glycemic Index
- Gluten-Free
- No Artificial Colors, Flavors, or Preservatives
- Free from Sugar Alcohols, Including Erythritol

[18] https://wholeearthsweetener.com/products/liquid-allulose (last visited Nov. 2, 2026).

30. The net-carbs statements on Whole Earth Allulose & Monk Fruit, Whole Earth Stevia Leaf, Monk Fruit & Allulose, Whole Earth Stevia Leaf, Monk Fruit & Allulose Brown, and Whole Earth Allulose each state "8g Total Carbs – 8g Allulose = 0g Net Carbs" per 2-teaspoon (8-gram) serving. Whole Earth Liquid Allulose lists allulose as its only ingredient and states "5g Total Carbs – 5g Allulose" per 1-teaspoon (7-gram) serving. The Whole Earth Stevia Leaf, Monk Fruit & Allulose single-serve packets state "1g Total Carbs – 1g Allulose" per packet.

31. The information panel on each Product reinforces, rather than cures, the misleading impression created by the Zero Sugar Representations. A consumer who turns over a Swerve or Whole Earth Product is told that it contains "0g" Total Sugars; a consumer who turns over Splenda Multi-Use Syrup is told that it is "[n]ot a significant source of … total sugars"; and every Product's ingredient statement identifies "allulose" without disclosing that it is a sugar.

32. The Products' Zero Sugar Representations are absolute, objective, and quantitative claims concerning whether and how much sugar is in the Products. Those claims are demonstrably false.

33. Plaintiff does not challenge, and Plaintiff's claims do not depend on, the contents of the Products' Nutrition Facts panel, including any "0g" Total Sugars declaration, which is consistent with the enforcement discretion FDA announced in its Guidance for Industry: The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels (Oct. 2020) (the "Allulose Guidance"). Plaintiff does not seek to require Defendants to make any different or additional declaration within the Nutrition Facts panel. Plaintiff challenges the Zero Sugar Representations that Defendants chose to make outside that panel—on the front and back panels of the package and in Defendants' advertising. The Nutrition Facts panel is relevant only because it compounds, rather than dispels, the deception.

**Allulose Is a Sugar**

34. Allulose is a sugar. Chemically, allulose is a monosaccharide.[19] Allulose is accordingly "a rare sugar," and "a monosaccharide that is low in calories and that maintains approximately 70% of sweetness relative to sugar."[20]

35. Allulose is not merely a sugar as a matter of chemical classification; it is used as one, and functions as a sugar for food manufacturing purposes. Allulose has approximately "70% of the sweetness of sucrose, which means it is viewed as a potential alternative sweetener."[21]

36. Because allulose is less sweet than table sugar, it is used in gram-scale quantities as a bulk sweetener. High-intensity sweeteners such as saccharin, aspartame, acesulfame potassium, neotame, sucralose, and advantame are approximately 200 to 20,000 times as sweet as sucrose.[22] By contrast, allulose has approximately 70% of sucrose's sweetness and, as the Products' own labels show, is used in large quantities as a bulk sweetener.[23]

37. Allulose also behaves like sugar in food. "It is convenient for the food industry to use D-allulose, as its chemical properties are similar to those of fructose in terms of solubility, water activity, and viscosity."[24] It is used as "a partial replacement of added sugars."[25] Allulose is

---

[19] Han-Joo Maeng *et al.*, Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol, 8 Foods art. 448, at 1 (2019) ("D-allulose, a C-3 epimer of D-fructose, is a rare monosaccharide used as a food ingredient or a sweetener"), https://doi.org/10.3390/foods8100448.
[20] Youngji Han et al., Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial, 10 Nutrients art. 2010, at 1–2 (2018), https://doi.org/10.3390/nu10122010.
[21] Maeng *et al.*, *supra* note 19, at 2.
[22] U.S. Food & Drug Administration, Aspartame and Other Sweeteners in Food, https://www.fda.gov/food/food-additives-petitions/aspartame-and-other-sweeteners-food (last visited Oct. 1, 2026).
[23] Mengting Tao, Wenli Zhang & Wanmeng Mu, D-Allulose: A New Generation of Potential Bulk Sweeteners in the Food Industry, 73 J. Agric. & Food Chem. 27,833, 27,833–35 (2025) (Viewpoint), https://doi.org/10.1021/acs.jafc.5c13620.
[24] Han *et al.*, *supra* note 20, at 10.
[25] *Id.*

"widely regarded as a promising substitute for sucrose"—that is, a substitute for table sugar, and one that is itself a sugar.[26]

38. As alleged above, although the Products' labels disclose allulose as an ingredient, they do not count that allulose toward Total Sugars or otherwise identify it as a sugar.

39. The FDA identifies allulose as a sugar. In its 2016 Nutrition Facts rulemaking, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[27] No such rulemaking has excluded allulose from the definition of Total Sugars. 21 C.F.R. § 101.9(c)(6)(ii).

40. As the Seventh Circuit recently held, "there is no dispute that allulose is a monosaccharide…[and] because the definition includes every monosaccharide…allulose is a sugar under §101.9(c)(6)(ii)."[28] The Seventh Circuit reached that determination at the FDA's urging; in that appeal, the FDA, appearing as invited *amicus curiae*, took the position that total sugars as defined in that regulation include all monosaccharides, including allulose.[29]

**<u>The Products Violate FDA Nutrient-Content Regulations</u>**

41. Congress empowered FDA to regulate food labeling through the Federal Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act of 1990, 21 U.S.C. § 301 *et seq.* FDA's food-labeling regulations appear at 21 C.F.R. Part 101.

42. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling.

---

[26] Wenli Zhang *et al.*, D-Allulose, a Versatile Rare Sugar: Recent Biotechnological Advances and Challenges, 63 Critical Revs. Food Sci. & Nutrition 5661, 5661 (2023) (published online Dec. 29, 2021), https://doi.org/10.1080/10408398.2021.2023091.
[27] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,796 (May 27, 2016).
[28] *Franco v. Chobani, LLC*, 184 F.4th 599, 604 (7th Cir. 2026).
[29] *Id.*

Information within the Nutrition Facts panel is not itself a nutrient-content claim, but the same information placed outside that panel is subject to the nutrient-content-claim regulations. 21 C.F.R. § 101.13(c). The Zero Sugar Representations appear outside that panel and directly state the amount of sugar in the Products. They are therefore express nutrient-content claims. *Id.* § 101.13(b)(1). The "0g sugar" and "0 Calories Sugar per serving" statements are also statements about the amount of a nutrient, which are separately governed by 21 C.F.R. § 101.13(i).

43. Nutrient content claims are strictly forbidden unless specifically allowed under FDA regulations. "A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 … may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D of this part." 21 C.F.R. § 101.13(b).

44. Section 101.60(c)(1) governs "sugar free" claims and expressly includes the term "zero sugar" among the terms it governs, together with "sugar free," "free of sugar," "no sugar," "without sugar," and "sugarless." 21 C.F.R. § 101.60(c)(1). Those terms may be used only if, among other conditions:

> (i) The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving . . . ; and
>
> (ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar[.]"

*Id.* § 101.60(c)(1)(i)–(ii).

45. The Products fail § 101.60(c)(1)(i). As alleged above, each of the Products contains more than 0.5 grams of allulose per labeled serving. Allulose is a sugar "as defined in §

101.9(c)(6)(ii).” The Products therefore contain more than 0.5 grams of sugars per reference amount and per labeled serving.

46. The Products’ “0g sugar” and “0 Calories Sugar per serving” statements independently violate 21 C.F.R. § 101.13(i). Outside the Nutrition Facts panel, a statement about the amount of a nutrient is permitted only if it “does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect.” 21 C.F.R. § 101.13(i)(3). Because allulose is a sugar as defined in § 101.9(c)(6)(ii), and each Product contains at least approximately 1 gram of allulose per labeled serving, the “0g sugar” statements are false. Placed alongside “Zero Calorie” and “1:1 Sugar Replacement” claims on products sold as substitutes for sugar, they also implicitly characterize the Products as sugar free, an implied nutrient content claim under § 101.13(b)(2) that the Products cannot satisfy under § 101.60(c)(1).

47. The Products independently fail § 101.60(c)(1)(ii). Allulose is an ingredient that is a sugar, and the Products’ ingredient statements list “ALLULOSE” (or, for Splenda Multi-Use Syrup, “Allulose Syrup”) without an asterisk or any of the statements the regulation requires. This failure is apparent from the face of the label and does not depend on the quantity of allulose in the Products.

48. Because the Products bear false, misleading, and unauthorized nutrient content claims, the Products are misbranded under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.13, 101.60(c), 101.9(c)(6)(ii).

49. Plaintiff does not seek to enforce the FDCA directly, but seeks relief under independently enforceable state consumer-protection and warranty laws, including the Illinois Food, Drug and Cosmetic Act, 410 ILCS 620/1 et seq., which adopts federal food-labeling regulations as Illinois requirements. See 410 ILCS 620/21. The federal provisions identify the

standards Illinois has adopted and the conduct that renders the Products misbranded under Illinois law. Plaintiff's claims also rest independently upon the fact that the Zero Sugar Representations and the messaging on the packaging as a whole are false and misleading to reasonable consumers.

50. Illinois law independently prohibits the same conduct. Under the Illinois Food, Drug and Cosmetic Act, a food is misbranded "[i]f its labeling is false or misleading in any particular," 410 ILCS 620/11(a), and, in determining whether labeling is misleading, account is taken of representations made and of "the extent to which the labeling or advertisement fails to reveal material facts," 410 ILCS 620/2.11. The Act prohibits the sale or delivery of misbranded food in Illinois. 410 ILCS 620/3.1.

**<u>Reasonable Consumers Cannot Detect Defendants' Deception</u>**

51. Reasonable consumers have no reason to search the back of the package, or to perform arithmetic using the Nutrition Facts panel, when presented with a conspicuous front-panel representation that the Products contain "ZERO SUGAR & CALORIES," "zero sugar," "0g sugar," "0 sugar per serving," or are "sugar free." Consumers are not expected to look beyond a misleading front-of-package representation to discover it is false. The Seventh Circuit has held that an absolute "zero sugar" promise on a food containing allulose plausibly deceives reasonable consumers.[30]

52. Here, moreover, the back of the package would not cure the deception. A consumer who reads the Nutrition Facts panel is told that the Product contains "0g" Total Sugars (or, for Splenda Multi-Use Syrup, that it is not a significant source of total sugars), and a consumer who reads the ingredient statement is not told that allulose is a sugar.

53. Reasonable consumers are not required to research the chemical classification of

[30] *Franco*, 184 F.4th at 607.

listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry, and few would recognize allulose—a relatively new food ingredient—as a sugar. Reasonable consumers are entitled to rely on Defendants to label the Products accurately.

54. The Zero Sugar Representations are material. Whether a sugar substitute contains sugar goes to the core reason consumers purchase it. A reasonable consumer would attach importance to the representation that a sugar substitute contains zero sugar in deciding whether to purchase it.

**<u>Defendants Knew or Should Have Known the Representations Were False</u>**

55. Defendants knew, or should have known, that the Zero Sugar Representations were false or misleading when they marketed, advertised, labeled, distributed, and sold the Products. Specifically, Defendants knew that: (a) the Products contain allulose; (b) allulose is a free monosaccharide and sugar; (c) the Products' packaging identifies allulose as an ingredient; (d) their labels nevertheless represent that the Products contain zero sugar; (e) reasonable consumers would rely on the Zero Sugar Representations when purchasing; (f) consumers would not receive the represented benefit of the bargain; and (g) the Zero Sugar Representations enabled Defendants to charge a premium for the Products. Indeed, the label of Whole Earth Stevia Leaf, Monk Fruit & Allulose Brown marks "MOLASSES*" with the disclosure "*ADDS A TRIVIAL AMOUNT OF SUGAR" but makes no such disclosure for allulose, its first ingredient, demonstrating that Defendants understand the disclosure the regulation requires and chose not to make it for allulose.

56. Defendants, as the manufacturers, marketers, and distributors of the Products, controlled, or at least participated in, making the Zero Sugar Representations on the Products' packaging and in advertisements. Defendants further formulate the Products and control their

ingredient statements, Nutrition Facts panels, and packaging. Defendants could have stopped using the Zero Sugar Representations, accurately qualified them, or reformulated the Products, but chose not to, thereby causing consumers to buy and overpay for the Products.

**Defendants' Representations Injured Plaintiff and the Classes**

57. As a direct and proximate result of Defendants' false and misleading Zero Sugar Representations, Plaintiff and Class Members: (a) paid money for Products that were not as represented; (b) paid a price premium for the Products; (c) were deprived of the benefit of their bargain; and (d) purchased Products that were misbranded and could not lawfully have been sold bearing the Zero Sugar Representations.

58. Plaintiff and Class Members accordingly suffered injury in fact and lost money or property as a result of Defendants' conduct.

**CLASS ACTION ALLEGATIONS**

59. Plaintiff brings this action on behalf of Plaintiff and all others similarly situated under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3). The proposed classes are defined as follows (collectively, the "Classes," and their members, "Class Members"):

(i) **Nationwide Class:** All persons in the United States who, during the applicable limitations period, purchased any of the Products for personal, family, or household use and not for resale.

(ii) **Illinois Subclass:** All persons who, during the applicable limitations period, purchased any of the Products in the State of Illinois for personal, family, or household use and not for resale.

60. Excluded from the Classes are: (1) Defendants, their parents, subsidiaries, affiliates, officers, and directors, and any entity in which any Defendant has a controlling interest; (2) the

judge and magistrate judge assigned to this action, their staff, and their immediate families; (3) Plaintiff's counsel and Defendants' counsel; and (4) persons who purchased the Products for resale.

61. Plaintiff reserves the right to amend the class definitions and to add classes or subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

62. **Numerosity:** The exact number of Class Members is unknown to Plaintiff and can be determined only through discovery, but, upon information and belief, Class Members number at least in the thousands, and joinder is impracticable. Class Members may be identified through Defendants' and third-party retailers' distribution and sales records and notified by mail, email, publication, and/or other appropriate means.

63. **Existence and Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual members, including:

(a) Whether allulose is a sugar;

(b) Whether the Zero Sugar Representations satisfy 21 C.F.R. § 101.60(c)(1)(i) and (ii);

(c) Whether the Zero Sugar Representations are likely to deceive reasonable consumers;

(d) Whether the Zero Sugar Representations are material;

(e) Whether the Products are misbranded under federal and Illinois law;

(f) Whether Defendants' conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act and the Illinois Uniform Deceptive Trade Practices Act;

(g) Whether the Zero Sugar Representations constitute express warranties, and whether

Defendants breached them;

(h) Whether Defendants were unjustly enriched;

(i) Whether Plaintiff and Class Members suffered damages and, if so, the measure of those damages; and

(j) Whether Plaintiff and Class Members are entitled to injunctive relief, restitution, attorneys' fees, and costs.

64. **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff was exposed to Zero Sugar Representations conveying the same message, purchased Products bearing them, and suffered the same type of economic loss.

65. **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests adverse to the Classes, is committed to vigorous prosecution of this action, and has retained counsel experienced in consumer class action litigation.

66. Plaintiff is not subject to any individual defenses that are unique or different from those applicable to other Class Members or to the Classes as a whole.

67. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the expense and burden of individual litigation make it economically infeasible for Class Members to seek redress individually, and class-wide adjudication avoids the risk of inconsistent judgments while conserving judicial and party resources.

68. The prosecution of separate actions would also create a risk of inconsistent rulings that could be dispositive of the interests of Class Members who are not parties to those adjudications and/or could substantially impair their ability to protect their interests.

69. **Equitable Relief**: Certification under Rule 23(b)(2) is also appropriate because

Defendants have acted on grounds that apply generally to the Classes—by placing the Zero Sugar Representations on every package of the Products—so that final injunctive and declaratory relief is appropriate with respect to the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### 815 ILCS 505/1 *et seq.*
### (On Behalf of Plaintiff and the Illinois Subclass Against All Defendants)

70. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs.

71. Plaintiff brings this claim on behalf of Plaintiff and the Illinois Subclass against all Defendants.

72. Plaintiff and Illinois Subclass members are "consumers," and each Defendant is a "person," within the meaning of 815 ILCS 505/1(c) and (e). The Products are "merchandise" within the meaning of 815 ILCS 505/1(b). Defendants' advertising, offering for sale, sale, and distribution of the Products constitute "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

73. The Act declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

74. **Deceptive acts and practices.** Defendants engaged in deceptive acts and practices

by labeling, marketing, and advertising the Products with the Zero Sugar Representations, which are false and likely to deceive reasonable consumers because the Products contain allulose, a sugar, in an amount that exceeds the threshold for a "zero sugar" claim, and because the Products' labels do not provide the disclosure required by 21 C.F.R. § 101.60(c)(1). Defendants' conduct also constitutes practices described in Section 2 of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(a)(5), (7), (9), and (12), as alleged in Count II.

75. Defendants made the Zero Sugar Representations with the intent that consumers rely on them in purchasing the Products. Defendants placed the Zero Sugar Representations among the front-panel claims on products sold as replacements for sugar.

76. **Unfair acts and practices.** Defendants' conduct is also unfair. It offends the public policy embodied in 21 U.S.C. § 343(a)(1), 21 C.F.R. § 101.60(c)(1), and 410 ILCS 620/11(a), which prohibit false and unauthorized nutrient content claims; it is unethical and unscrupulous, because it exploits consumers' unfamiliarity with allulose to sell a product containing a sugar as containing none; and it causes substantial injury to consumers, who could not reasonably avoid that injury because the front-panel representation was absolute and the back-panel information reinforced it.

77. Defendants' conduct was not "specifically authorized" by any law administered by a regulatory body within the meaning of 815 ILCS 505/10b(1). No statute, regulation, or agency action authorizes a "zero sugar" claim on a food that fails 21 C.F.R. § 101.60(c)(1), and FDA's Allulose Guidance does not address nutrient content claims.

78. Defendants' deceptive and unfair conduct occurred in the course of trade or commerce in Illinois. Plaintiff and Illinois Subclass members purchased the Products in Illinois, and Defendants' labeling and marketing decisions were targeted at consumers in Illinois.

79. Plaintiff saw and was deceived by the Zero Sugar Representations before purchasing the Products. As a direct and proximate result of Defendants' violations, Plaintiff and Illinois Subclass members suffered actual damage, including the price premium attributable to the Zero Sugar Representations and the loss of the benefit of their bargain.

80. Pursuant to 815 ILCS 505/10a(a) and (c), Plaintiff and Illinois Subclass members seek actual damages, punitive damages to the extent the Court finds Defendants' conduct willful, injunctive relief, reasonable attorneys' fees and costs, and such other relief as the Court deems proper.

## COUNT II
## VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## 815 ILCS 510/1 *et seq.*
## (On Behalf of Plaintiff and the Illinois Subclass Against All Defendants)

81. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs.

82. Plaintiff brings this claim on behalf of Plaintiff and the Illinois Subclass against all Defendants.

83. Each Defendant is a "person" within the meaning of 815 ILCS 510/1(5).

84. A person engages in a deceptive trade practice when, in the course of the person's business, the person, among other things, "represents that goods . . . have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have," 815 ILCS 510/2(a)(5); "represents that goods . . . are of a particular standard, quality, or grade . . . if they are of another," *id.* § 510/2(a)(7); "advertises goods . . . with intent not to sell them as advertised," *id.* § 510/2(a)(9); or "engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding," *id.* § 510/2(a)(12).

85. By making the Zero Sugar Representations, Defendants represented that the

Products have a characteristic and quantity—zero sugar—that they do not have; represented that the Products meet a standard—the federal standard for a "zero sugar" claim—that they do not meet; advertised the Products with intent not to sell them as advertised; and engaged in conduct creating a likelihood of confusion or misunderstanding as to whether the Products contain sugar. A plaintiff need not prove competition between the parties or actual confusion. 815 ILCS 510/2(b).

86. Plaintiff and Illinois Subclass members are likely to be damaged by Defendants' deceptive trade practices in the future. Plaintiff wishes to purchase sugar-free sweeteners in the future, including the Products, but cannot rely on Defendants' Zero Sugar Representations, and Defendants continue to make those representations.

87. Pursuant to 815 ILCS 510/3, Plaintiff and the Illinois Subclass seek an injunction prohibiting Defendants from continuing to make the Zero Sugar Representations unless and until the Products satisfy 21 C.F.R. § 101.60(c)(1), and, because Defendants' conduct was willful, an award of costs and attorneys' fees.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and the Nationwide Class or, Alternatively, the Illinois Subclass, Against All Defendants)**

88. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs.

89. Plaintiff brings this claim on behalf of Plaintiff and the Nationwide Class or, alternatively, the Illinois Subclass against all Defendants.

90. Defendants are merchants and sellers of the Products within the meaning of 810 ILCS 5/2-104 and 5/2-103(1)(d). Under 810 ILCS 5/2-313(1), any affirmation of fact or promise made by the seller to the buyer that relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise, and any

description of the goods that is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

91. Through the Zero Sugar Representations on the Products' packaging, Defendants made an affirmation of fact and a description of the goods—that the Products contain zero sugar—directed to the consumers who purchase the Products. That affirmation and description formed part of the basis of the bargain when Plaintiff and members of the Classes purchased the Products.

92. Defendants breached their express warranty because the Products contain allulose, a sugar, and do not conform to the Zero Sugar Representations.

93. Privity is not required because Defendants made the express warranty on the Products' labels, which were directed to and relied upon by the ultimate purchasers.

94. Plaintiff provided Defendants with timely notice of the breach pursuant to 810 ILCS 5/2-607(3)(a). On October 30, 2026, Plaintiff, through counsel, sent Defendants a letter by certified mail notifying Defendants that the Products do not conform to their express warranty and demanding that Defendants cure the breach. Defendants have failed to do so.

95. As a direct and proximate result of Defendants' breach, Plaintiff and members of the Classes were damaged in the amount of the difference between the value of the goods accepted and the value they would have had if they had been as warranted and are entitled to all other relief allowed by law.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class or, Alternatively, the Illinois Subclass, Against All Defendants)**

96. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs.

97. Plaintiff brings this claim on behalf of Plaintiff and the Nationwide Class under

Illinois law or, in the alternative, on behalf of Plaintiff and the Illinois Subclass.

98. Plaintiff brings this claim in the alternative to Plaintiff's legal claims, as permitted by Federal Rule of Civil Procedure 8(d)(2)–(3).

99. Plaintiff and Class Members conferred a benefit on Defendants by purchasing the Products, whether directly or through retailers, and paying a price premium attributable to the Zero Sugar Representations.

100. Defendants knew of and appreciated the benefit conferred on them and have retained the revenues from Plaintiff's and Class Members' purchases.

101. Defendants' retention of that benefit is unjust because Defendants obtained it by means of the false and misleading Zero Sugar Representations, which induced purchases that otherwise would not have occurred or would have occurred only at lower prices.

102. Under these circumstances, Defendants' retention of the benefit violates fundamental principles of justice, equity, and good conscience. Plaintiff and Class Members seek restitution and disgorgement of the amounts by which Defendants were unjustly enriched.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment against Defendants as follows:

(a) An order certifying the Classes under Federal Rule of Civil Procedure 23, naming Plaintiff as representative of the Classes, and appointing Plaintiff's counsel as Class Counsel;

(b) An order declaring that Defendants' conduct violates the statutes and common-law doctrines referenced herein;

(c) An order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d) Actual damages, punitive damages as permitted under 815 ILCS 505/10a, restitution, and/or disgorgement, in an amount to be proven at trial;

(e) Pre- and post-judgment interest on all amounts awarded;

(f) Injunctive relief, including an order requiring Defendants to cease labeling, marketing, and selling the Products with the Zero Sugar Representations unless and until the Products satisfy 21 C.F.R. § 101.60(c)(1);

(g) An award of Plaintiff's and the Classes' reasonable attorneys' fees, expenses, and costs of suit; and

(h) Such other and further relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

Dated: November 4, 2026

*/s/ Beena M. McDonald*

Beena M. McDonald
Steven A. Schwartz*
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 W. Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
sas@chimicles.com
bmm@chimicles.com

James J. Rosemergy
**CAREY & DANIS LLC**
8235 Forsyth Blvd., Suite 1100
St. Louis, Missouri 63105
Telephone: (314) 725-7700
jrosemergy@careydanis.com

*Attorneys for Plaintiff and the Putative Classes*

* *Pro hac vice forthcoming*